UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERT RATCLIFF,** : | |
| : | **Case No. 2:18-cv-715** |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge Kimberly A. Jolson** |
| **NORFOLK SOUTHERN RAILWAY** : | |
| **COMPANY** : | |
| : | |
| : | |
| **Defendant.** : | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Robert Ratcliff's Motion for Partial Summary Judgment (ECF No. 32) and Defendant Norfolk Southern Railway Company's ("NSRC") Motion for Partial Summary Judgment (ECF No. 33). Both motions are fully briefed and ripe for disposition. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is **DENIED,** and Defendant's Motion for Partial Summary Judgment is **DENIED**.

Also before the Court is Plaintiff's Motion to Supplement Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (ECF No. 42). Plaintiff's Motion to Supplement simply called the Court's attention to a case in this District that was decided after briefing closed on the cross motions for partial summary judgment. Defendant opposed the motion and filed a response as to the inapplicability of the cited case. The Court will determine the relevance of the cited case but will allow Plaintiff to supplement his Motion for Partial Summary Judgment. Accordingly, Plaintiff's Motion to Supplement is **GRANTED**.

## I. BACKGROUND

This case arises out of an alleged injury sustained by Plaintiff early on the morning of January 15, 2018, on NSRC's main rail line running between Portsmouth, Ohio and Columbus, Ohio. Plaintiff was a locomotive conductor with 16 years of experience and safety training as a conductor and engineer. On the morning of the accident, Plaintiff, Engineer David Barnett, and Engineer Cori Martin conducted train 742LB12 from Portsmouth, Ohio to Columbus. (ECF No. 32-2, Ratcliff Dep. at 10, 15, 26–28, 31). After arriving in Columbus at approximately 4:30 a.m., the three men were shuttled a short distance to an area known as "Bannon," where they prepared to conduct train 776LB13 back to Portsmouth. (*Id.* at 27, 31–32, 35–36, 45). Train 776LB13 was powered by two locomotive units: NS 3637 and NS 3661.

There were three to four inches of snow on the ground in Columbus that morning, and temperatures were in the single digits. (*Id.* at 27–28, 52). It is unclear exactly when the snow and ice accumulated on the ground. Plaintiff's expert witness, however, testified that the ice conditions were already present when train 776LB13 and its crew arrived in Columbus, at least an hour prior to Plaintiff's arrival, and with enough time to report and correct the conditions. (ECF No. 29-1, Reilly Dep. 73−74). He also testified that he could tell that the ice in question "melted and then refroze and that [it] happen[ed] over a long period of time." (*Id.* at 58−59). The extent to which winter weather accumulated during the crew's time in Columbus is also unclear. Plaintiff testified that it was not snowing in Columbus when they arrived and that he did not notice any new precipitation while they were at Bannon, but both Barnett and Martin testified that it began to snow lightly while they were there. (ECF No. 32-2, Ratcliff Dep. at 32; ECF No. 32-4, Barnett Dep. at 18; ECF No. 32-4, Martin Dep. at 21).

2

The three men began their pre-departure routine for Train 776LB13. They boarded lead locomotive NS 3637 through the door at the short hood end and placed their personal belongings in the cab. (ECF No. 32-2, Ratcliff Dep. at 39–41). Barnett then exited the NS 3637 through the same door the men entered, climbed onto the snow-covered ground, and released the handbrakes for both the lead and trailing locomotives. (ECF No. 32-4, Barnett Dep. at 20–21). On his way back, Barnett boarded NS 3637 at the rear of the locomotive and walked along the locomotive's exterior walkway. (*Id.* at 26). Barnett noticed the walkway was "pretty well covered" with ice and he planned to wait until they reached Portsmouth to report the accumulated ice and snow because there were no mechanical department employees on duty at Bannon. (*Id.* at 26–29, 69).

Meanwhile, Plaintiff tended to his pre-departure duties, which included releasing the handbrakes on the train cars behind the lead locomotives. (ECF No. 32-2, Ratcliff Dep. at 52–53). Plaintiff took a similar approach to Barnett to complete his exterior duties: he exited NS 3637 the same way he entered the locomotive, walked along the snow-covered ground, released the brakes, re-boarded NS 3637 at the rear of the locomotive, and proceeded toward the front of the cab via the exterior walkway. (*Id.* at 47–49, 52). Plaintiff chose this route because the other side of the train, the ballast side, had worse conditions. (*Id.*)

According to NSRC safety rules, employees are required to wear winter footwear and carry a lantern and other personal protective equipment when directed to do so. (ECF No. 29-1, Reilly Dep. at 3–4). As Plaintiff worked to complete to his pre-departure duties, he wore NSRC-approved footwear, carried his NSRC-issued lantern, and carried a "brake stick," which he used to release the handbrakes. (ECF No. 32-2, Ratcliff Dep. at 55, 59). He also held onto a handrail as he walked because the "scattered" ice along the walkway made the surface slippery. (*Id.* at 55−56).

3

About halfway to the cab, Plaintiff slipped on a patch of ice that was too long to avoid. (*Id.* at 59). During the fall, Plaintiff's right foot slipped forward, he lost grip of the railing, and he fell on his buttocks and back. (*Id.* at 60–62). He experienced immediate pain in his lower back and right leg. (*Id.* at 68). Barnett assisted him back into the cab of the train. (*Id.* at 68–69). Following Plaintiff's fall, NSRC conducted its own investigation and noted in the resulting report that the "walkways were observed to be snow and ice covered." (ECF No. 32-9, NSRC Inv. Rep. at 2).

Plaintiff initiated this case on July 20, 2018, by filing a complaint asserting two causes of action against NSRC under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq*. Plaintiff's first cause of action alleges that NSRC negligently failed to provide Plaintiff with a reasonably safe place to work. Plaintiff's second cause of action alleges negligence *per se* for NSRC's alleged violations of the Federal Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq.*, and various federal regulations, including 49 C.F.R. § 229.119(c), 49 C.F.R. § 229.45, and 49 C.F.R. § 229.7(a). Both parties now move for partial summary judgment on Plaintiff's second cause of action.

## II. STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely

4

colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply

because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III. LAW AND ANALYSIS

Defendant seeks summary judgment on Plaintiff's claim brought under the Locomotive Inspection Act ("LIA") via 49 C.F.R. § 229.119(c). Both parties seek partial summary judgment on Plaintiff's claims brought under the LIA via 49 C.F.R. § 229.7 and 49 C.F.R. § 229.45. The Court will address the potential grounds for recovery in turn below.

#### A. Applicable Statutory and Regulatory Scheme

The Federal Employers' Liability Act ("FELA") imposes liability on railroad companies for "damages to any person suffering injury while he is employed . . . resulting in whole or in part from the negligence" of the railway. 45 U.S.C. § 51. The FELA's primary purpose is to protect railroad employees and give them a statutory cause of action that allows employees to recover for employer negligence. *Chapman v. Norfolk S. Ry. Co.*, No. 1:18-CV-00027, 2020 WL 1676915, at *3 (S.D. Ohio Apr. 6, 2020). To succeed on a FELA claim, a plaintiff must "prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation. *Przybylinski v. CSX Transp. Inc.*, 292 F. App'x 485, 488 (6th Cir. 2008) (quoting *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 6th Cir. 1990)). Proof of negligence is not required, however, if a violation of the LIA is found. *Harper v. Norfolk S. Ry. Co.*, 992 F. Supp. 2d 795, 803 (S.D. Ohio 2014) (Sargus, J.).

The LIA was enacted by Congress to supplement the FELA. It imposes an absolute duty on railroad carriers to ensure that locomotives and their parts and appurtenances "[a]re in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701;

*see also Lilly v. Grand Trunk W.R.R. Co.*, 317 U.S. 481, 485 (1943). The LIA does not create an independent cause of action but instead establishes that violating the LIA is negligence *per se* under the FELA. *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 427 (6th Cir. 2010); *see also Wells v. CSX Transp. Inc.,* No. 1:08-CV-00837, 2010 WL 3703711, at *4 (S.D. Ohio Sept. 17, 2010) (citing *O'Donnell v. Elgin, Joliet & E. Ry. Co.,* 338 U.S. 384, 390–91 (1949)) ("There is no question that a . . . LIA violation is *per se* negligence in a FELA suit, such that if the injured employee shows any such violation, the railroad is strictly liable for any injury resulting from the violation."). Accordingly, if a railway carrier employee presents "proof of an unsafe locomotive component" and establishes that the unsafe condition caused his injury, "absolute liability is imposed upon the [railway carrier]." *Chapman*, 2020 WL 1676915 at *3 (quoting *Williams v. S. Pac. Transp. Co.*, 813 F. Supp. 1227, 1230 (S.D. Miss. 1992)).

Carriers violate the LIA either by breaching their "broad duty to keep its locomotives' parts and appurtenances in proper condition and safe to operate without unnecessary danger of personal injury," or by failing to comply with regulations issued by the Federal Railroad Administration ("FRA"). *Id.* (citing *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298–99 (7th Cir. 1996)). The Secretary of Transportation has the authority to issue regulations relating to every area of railroad safety. 49 U.S.C. § 20103(a). Acting through the FRA, the Secretary may also promulgate and enforce safety regulations affecting the working conditions of railroad employees. *Practico v. Portland Terminal Co.*, 783 F.2d 183, 186 (3d Cir. 1987). Pursuant to this authority, the Secretary promulgated three regulations applicable to this case:

(1) 49 C.F.R. § 229.119(c)

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing.

(2) 49 C.F.R. § 229.45 General Conditions

> All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive, or train. These conditions include: insecure attachment of components, including third rail shoes or beams, traction motors and motor gear cases, and fuel tanks; fuel, oil, water, steam, and other leaks and accumulations of oil on electrical equipment that create a personal injury hazard; improper functioning of components, including slack adjusters, pantograph operating cylinders, circuit breakers, contactors, relays, switches, and fuses; and cracks, breaks, excessive wear and other structural infirmities of components, including quill drives, axles, gears, pinions, pantograph shoes and horns, third rail beams, traction motor gear cases, and fuel tanks.

(3) 49 C.F.R. § 229.7 Prohibited Acts

> (a) [The LIA makes] it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances—
>
> > (1) Are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb; . . .

The Court will assess Plaintiff's claims under each of these regulations as well as the general standard set forth in the LIA.

## B. Plaintiff's Claim Arising under 49 C.F.R. § 229.119(c).

Defendant moves for summary judgment for Plaintiff's § 229.119(c), apparently on two separate grounds: (1) that the regulation does not apply to outdoor walkways like the one where Plaintiff's accident occurred; and (2) that the regulation does not impose a duty on railroads to prevent the accumulation of ice and snow on walkways. Neither of these arguments is supported by case law, as is detailed below.

!

1. <u>Whether Section 229.119(c) applies to outdoor locomotive walkways</u>

Defendant argues that a plain reading of § 229.119(c) dictates that the regulation only contemplates slipping hazards that are present *inside* a locomotive and is therefore inapplicable to outdoor walkways. To make this argument, Defendant cites the testimony from its expert witness, who stated that, in his experience, "the Federal Railroad Administration has interpreted 'passageways' to mean the area on closed carbody locomotives where it is necessary to walk along the diesel engine and associated mechanical and electrical equipment in order to move from one end of the locomotive to the other." (ECF No. 33-1, Ex. A-1, Honeycutt Findings ¶ 47).[1] Accordingly, Defendant argues that indoor "passageways" and outdoor "walkways" are distinct from one another, that the regulation does not apply to outdoor walkways, and that the regulation does not apply Plaintiff's accident, which occurred on an outdoor walkway. Defendant relies heavily on *Coleman v. Norfolk Southern Railway Co.*, which adopted Defendant's proposed approach "[b]ased upon the plain reading of the regulations," but did not cite any caselaw or federal guidance in support of that approach. 304 F. Supp. 3d 648, 655 (E.D. Ky. 2018).

The Western District of Virginia, on the other hand, arrived at the opposite conclusion in *Brall v. Norfolk Southern Railroad Co.*, because it found that *Coleman* could not be reconciled with regulatory guidance written by the FRA. No. 2:17-cv-00017, 2018 WL 2144612 (W.D. Va. May 8, 2018). In *Brall*, the plaintiff was injured as he and his fellow crew members prepared a train for departure. The accident occurred while the plaintiff was outside of the train cabin, just after he had released the train's handbrakes. He slipped on an unperceived "slippery substance" on an outdoor walkway and fell. *Id.* at *2. The plaintiff brought a LIA claim against NSCR for

---

[1] Conversely, Plaintiff's expert witness, a former National Transportation Safety Board employee and FRA inspector, testified that he recalls the FRA citing railroad carriers with "defect[s] for snow and ice accumulations on the walkways" on numerous occasions, though he could not recall whether these defects resulted in violations of the regulation. (ECF No. 29-1, Reilly Dep. at 42−44, 52−54).

violating Section 229.119(c). After the accident, Norfolk Southern Railway Company confirmed that oil and grease were present on the walkway and that both substances constituted a "slipping and tripping hazard," but it argued that Section 229.119(c) did "not apply to locations outside the [train's] cab" and therefore did not bear on the plaintiff's accident. *Id* at. *10. To evaluate this argument, the court reviewed the FRA's guidance document, the Motive Power and Equipment Compliance Manual, and found that the agency was "unambiguous" about the scope of the regulation: "To the extent there is a difference between a "walkway" and a "passageway," Section 229.119(c) applies to both." *Id.* at *9.

*Brall* also cited "overwhelming support in the case law" in deciding to treat the terms "passageway" and "walkway" as synonymous and under the purview of the LIA. *Id*. For example, in *Wells v. CSX Transportation, Inc.*, the court found that "the safety of [an outdoor] walkway between locomotives [is] an issue falling under the LIA." No. 1:08-CV-00837, 2010 WL 3703711, *1, *5 (S.D. Ohio Sept. 17, 2010) (denying the defendant's motion for summary judgment because a reasonable jury could conclude that the defendant failed to provide a safe walkway and that this failure contributed to the plaintiff's injury). In *McClain v. Norfolk Southern Railway Co.*, the court applied its Section 229.119(c) analysis to an outdoor walkway between two locomotives. No. 3:07-cv-2389, 2009 WL 1812090, at *1 (N.D. Ohio June 23, 2009). In *McGinn v. Burlington North Railroad Co.*, the court noted that 229.119(c) claims generally occur "when a railroad has allowed foreign substances to accumulate on . . . walkways." 848 F. Supp. 827, 830 (N.D. Ill. Apr. 14, 1994). Relying on both FRA guidance and case law, the *Brall* court rejected NSRC's argument and concluded that Section 229.119(c) applies to outdoor walkways. *Id.* at *10.

To summarize, the Court's attention has been drawn to several LIA cases using the terms "passageways" and "walkways" interchangeably. Of these, *Brall* and its progeny have held that

Section 229.119(c) applies to outdoor walkways, based on guidance from the FRA . Only one case, *Coleman*, held the opposite. The Court agrees with *Brall's* finding that "passageway" and "walkway" may be used synonymously and that Section 229.119(c) applies to both. Accordingly, Defendant is not entitled to summary judgment because Plaintiff's accident occurred on an outdoor walkway.

2. Whether Section 229.119(c) applies to the accumulation of snow and ice

Defendant also argues that § 229.119(c) does not pertain to naturally occurring precipitation such as ice or snow. Again, the Defendant relies on a plain reading of the regulation and the *Coleman* case to support its argument. The Defendant contends that applying § 229.119(c) to ice and snow accumulation on outdoor walkways leads to "clearly absurd and nonsensical results." (ECF No. at 11).

Both federal and state courts, however, have found that accumulation of ice and snow constitute a violation of 49 C.F.R. § 229.119(c). *See, e.g.*, *McGinn*, 102 F.3d at 300 ("The regulation also places strict liability on a railroad for failure to keep floors free of foreign substances such as oil and grease or the elements such as snow and ice."). For example, in *Wagner v. Union Pacific Railroad Company*, the Nebraska Court of Appeals held that snow and ice covering a locomotive walkway constituted a slipping hazard as a matter of law and "was accordingly a violation of § 229.119(c)." 642 N.W. 2d 821, 840 (Neb. Ct. App. 2002). The Court of Appeals affirmed the trial court's decision to grant summary judgment in favor of the plaintiff's LIA claim because the record clearly demonstrated that ice and snow accumulated on an outdoor locomotive walkway, that the accumulation created a slipping hazard, and that the accumulation caused the plaintiff's injuries. *Id.* at 840−41. The Court of Appeals found that this evidence "was such that reasonable minds could not conclude other than the ice and snow

11

created a slipping hazard." *Id.* at 41. Similarly, in *Martin v. BNSF Railway Co.*, the Montana Supreme Court upheld the trial court's denial of the defendant's motion for summary judgment because it found that accumulated snow and ice on external locomotive steps can constitute a violation of the LIA. 352 P.3d 598, 605 (Mont. 2015). Due to the factual disputes in the case, the court determined that the jury should determine the extent of the snow and ice accumulation and evaluate whether the snow and ice contributed to the plaintiff's fall. *Id.*

The case law demonstrates that § 229.119(c) pertains both to outdoor locomotive walkways and to the accumulation of snow and ice on those walkways. As a result, Defendants cannot successfully argue that § 229.119(c) does not impose liability on railroads for injuries employees sustain due to icy or snowy walkways. The Court **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's § 229.119(c) claim.

### C. Plaintiff's Claim Arising under 49 C.F.R. § 229.45

Plaintiff argues that Defendant did not provide Plaintiff with a locomotive that was free of conditions that endangered the safety of the crew as required by § 229.45 claim and moves for summary judgment**.** Defendant, on the other hand, argues that § 229.45 does not apply to Plaintiff's accident because an outdoor walkway is not a "system or a component" and because the regulation did not intend to include snow and ice in the conditions it protects against. Once again citing *Coleman* as its sole case law on this point, Defendant also moves for summary judgment.

As stated above, § 229.45 mandates that "[a]ll systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive, or train." The regulation also provides examples of applicable components, such as "third rail shoes or beams," and examples of applicable conditions, such as "fuel, oil, water, steam, and other leaks and accumulations of oil . . . that create a personal injury hazard." *Diede v. Burlington N. R.R. Co.*, 772 F.2d 593 (9th Cir. 1985). The list of components and conditions is meant to be "illustrative, not

12

exclusive." To determine the extent of the regulation's scope beyond the examples provided in the regulation text, the "FRA believes that, 'conditions that endanger the safety of the crew, locomotive, or train' provide the proper and lawful limit to the application of this section." (Fed. R.R. Admin., *Motive Power and Equipment Compliance Manual* 8-33, 8-34 (July 2012), https://railroads.dot.gov/elibrary/motive-power-and-equipment-compliance-manual).

Using this guiding principal, the Colorado Court of Appeals permitted the jury to determine whether a plaintiff's fall on an icy surface running along the outside of a train violated § 229.45 in *Elston v. Union Pacific R.R. Co.*, 74 P.3d 478 (Colo. 2003). There, the plaintiff had just replaced the controlling locomotive as part of a repair project he completed. As he walked on the tracks alongside the locomotive towards the front of the train, he slipped and fell on a snow-covered ballast, which is "gravel or broken stone laid in a [railroad] roadbed." *Id.* at 481, 487 (quoting *Webster's Third New International Dictionary*, 167, 1963 (1986)). The court held that there was a genuine dispute about whether the defendant failed to comply with 229.45 and denied both parties summary judgment. *Id.* at 484.

The Court agrees with *Elston*'s approach. Acknowledging that neither the list of systems or components nor the list of conditions in § 229.45 is exhaustive, the Court finds that both the train platform where Plaintiff was injured and the snow and ice that had accumulated there could fall within the purview of the regulation. The walkway where Plaintiff fell was a feature of the locomotive system that enabled crew members like Plaintiff to perform essential pre-departure tasks, such as releasing the handbrakes of railcars prior to embarking on a trip. The crew could not fully prepare the train for departure without exiting the locomotive and walking along the outdoor walkways. Moreover, snow and ice accumulation on a locomotive component like a platform could certainly constitute a condition that endangers the crew. Here, factual disputes still exist regarding

13

when the snow and ice accumulated, the extent to which the snow and ice covered the walkway Plaintiff used, and whether Defendant had time to correct the snowy and icy conditions before Plaintiff and his fellow crew members arrived in Columbus. The Court therefore **DENIES** both Plaintiff's and Defendant's motions for summary judgment with respect to Plaintiff's § 229.45 claim.

### D. Plaintiff's Claim Arising under 49 C.F.R. § 229.7(a)(1) and 49 U.S.C. § 20701

Defendant moves for summary judgment for violations under 49 C.F.R. § 229.7(a),[2] arguing that the locomotive walkway in this case does not constitute an "unnecessary peril" or an "unnecessary risk of injury" because it is "impossible to eliminate the presence of snow and ice in all areas where railroad employees are assigned to work." (ECF No. 33 at 3, 16−17). Plaintiff, on the other hand, alleges that the ice conditions present on the walkway establish that Defendant failed to comply with its statutory duty under § 229.7(a).

The LIA provides that:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—(1) are in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and (3) can withstand every test prescribed by the Secretary under this chapter.

29 U.S.C. § 20701. Similarly, under 49 C.F.R. § 229.7, it is unlawful for any carrier to use any locomotive unless the entire locomotive and its appurtenances "[a]re in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb." Congress recognizes that "the operation of an engine, however equipped, involves *some* 'danger to life or limb.'" *Gregory v. Missouri Pacific R.R.*, 32 F.3d 160, 165 (5th Cir. 1994) (quoting *United States*

---

[2] Plaintiff did not directly allege a violation of § 229.7(a) in his Complaint, but any violation of 45 C.F.R. § 229, *et seq.*, can serve as grounds for Plaintiff's general FELA and LIA claims. Accordingly, both parties moved for summary judgment on this basis.

14

*v. Baltimore & O.R. Co.*, 293 U.S. 454, 462, 55 S. Ct. 268 (1935) (emphasis added)). Unnecessary danger, however, is not permitted when "exposure to injury or destruction [] is not required by the usual circumstances" of an employee's job, or when it goes "over and above that which is usually, ordinarily or necessarily incidental to the performance of the particular duty." *Banta v. Union Pac. R. Co.*, 362 Mo. 421, 430, 242 S.W.2d 34, 40 (Mont. 1951).

Defendant relies on *Turner v. Clinchfield Railroad Co.* in support of its claim that railroad carriers owe no duty to prevent the accumulation of snow or ice under § 229.7. 489 S.W.2d 257 (Tenn. App. 1972). In *Turner*, the plaintiff slipped on a single piece of ice on the steps of the locomotive, but there was "no proof to show that the ice had been on the steps a sufficient time so as to constitute constructive notice." *Id.* at 260. Because of this lack of evidence, the court granted summary judgment to the defendant. Here, however, Plaintiff has offered evidence that the snow and ice were present when the initial crew brought train 776LB13 to Columbus, at least an hour before Plaintiff and his crew arrived. Plaintiff has also demonstrated that the previous crew tied train 776LB13 down and therefore would have left the cab of the train and experienced the adverse conditions outside. Moreover, Defendant has not produced any evidence to dispute this time frame, nor has it produced any evidence about the steps it took to address the snow and ice accumulation at the railyard. These differences are significant and render *Turner* an inappropriate case to apply to the facts of this case.

More apt to the case sub judice are *Whelan v. Penn Central Co.*, 503 F.2d 886 (2d Cir. 1974) and *Wells v. CSX Transp. Inc.*, No. 1:08-CV-00837, 2010 WL 3703711 (S.D. Ohio Sept. 17, 2010). First, in *Whelan*, the Second Circuit held a railroad carrier liable under the LIA predecessor statute when a plaintiff slipped on an ice-covered train step that was caused by the rain and sleet storm earlier that day. *Whelan*, 503 F.2d at 888 (reversing the lower court decision).

15

In so deciding, the *Whelan* court relied on *Lilly v. Grand Turk Railroad Co.*, in which the Supreme Court also held that LIA predecessor statute protected against ice accumulation and allowed the jury to determine whether the ice at issue constituted unnecessary peril. 317 U.S. 481, 486 (1943). Second, in *Wells*, the plaintiff tripped on an uneven and unlit outdoor walkway while he was working on the train. *Id.* at *1. Defendant argued that the accident did not present unnecessary risk of injury because the plaintiff had traversed the walkway before and knew of its condition. *Id.* at *3. Defendant also argued that there was no unnecessary risk because it provided the plaintiff with safety chains to assist his passage over the walkway. *Id.* The Court rejected both arguments and denied the defendant's motion for summary judgment, finding that "a reasonable jury could find that a poorly lit passageway of misaligned platforms could constitute an unnecessary peril to life or limb in violation of the LIA." *Id.* at *4.

Similarly, here the evidence is such that a jury could reasonably find for either party. No reasonable jury could conclude that carriers have an absolute, ongoing duty to keep a locomotive's exterior walkways entirely free of precipitation-caused slipping hazards at all times—naturally-occurring weather simply does not allow for this degree of responsiveness. Conversely, no reasonable jury could conclude that carriers may allow snow and ice to accumulate on a locomotive's exterior walkways indefinitely, and particularly not when the railroad carrier knows or should know about inclement weather conditions. The facts and evidence presented in this case fall somewhere on the continuum between those two extremes, and the jury should determine whether the ice accumulation Plaintiff encountered constitutes an unnecessary danger or peril to life and limb.

For these reasons, both parties' cross motions for summary judgment on Plaintiff's claims arising under 49 C.F.R. § 229.7(a)(1) and 49 U.S.C. § 20701 are **DENIED**.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is **DENIED,** Defendant's Motion for Partial Summary Judgment (ECF No. 33) is **DENIED**, and Plaintiff's Motion to Supplement Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (ECF No. 42) is **GRANTED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT COURT**

**DATED: October 27, 2020**